UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TETON COUNTY REPUBLICAN CENTRAL COMMITTEE, | Case No. 4:16-cv-00160-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MARY LOU HANSEN, | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is Plaintiff's Motion for temporary restraining order and preliminary injunction, filed on April 14, 2016, in the Seventh Judicial District Court in and for Teton County, Idaho. (Dkt. 1-3; 4.) Defendant was served with a copy of the Complaint and the Motion, and On April 15, 2016, this matter was removed to this Court. Defendant filed an appearance and notice of removal. The matter was conditionally assigned to the undersigned Magistrate Judge, and the parties were notified of the consent process. Both parties consented to proceed before a U.S. Magistrate Judge. (Dkt. 3.) On

**MEMORANDUM DECISION AND ORDER - 1**

April 16, 2016, Defendant filed her opposition to the request for a temporary restraining order and preliminary injunction.

The matter involves Sheriff Tony Liford's ability to run as a Republican candidate for Sheriff of Teton County, and impacts the Republican primary election to be held on May 17, 2016. Because of the time constraints imposed in this election matter, the Court conducted a hearing on April 18, 2016, at which the parties appeared and presented oral argument. After carefully considering the parties' arguments, the applicable legal authorities, and the record, the Court will grant a preliminary injunction for the reasons discussed below.

## BACKGROUND

Tony Liford is the acting Sheriff of Teton County, elected to his current term of office on November 4, 2014, as a Democrat. Mary Lou Hansen is the Clerk of Teton County. On February 29, 2016, Liford filed a declaration to run as a Democrat in the upcoming primary election. On or about March 10, 2016, Liford decided to change his party affiliation. With Plaintiff's endorsement, he desired to run for the office of Sheriff as a Republican. Liford contacted the Teton County Clerk, and was instructed to file four documents: (1) a signed notice of withdrawal of his application for candidacy as a Democrat; (2) an Idaho Political Party Affiliation Declaration Form indicating his desire to affiliate with the Republican Party; (3) a verified declaration of candidacy to run as a Republican; and (4) an Appointment and Certification of Political Treasurer for Candidates and Committees. Liford filed all four documents on March 10, 2016. The

Clerk's Office accepted the documents Liford submitted. Hansen certified Liford as a Republican candidate for Sheriff.

By statute, March 11, 2016, was the last day an elector, or voter, currently registered by a party could change his or her party affiliation or become "unaffiliated" prior to the primary election by filing a signed form with the County Clerk. It was also the last day for filing declarations of candidacy with the Secretary of State or the County Clerk for the May 17, 2016 primary election. On March 30, 2016, the list of registered voters was prepared, identifying Liford as a registered Republican. On April 1, 2016, the Clerk's office mailed ballots for the Republican primary absentee voters. The ballots identified Liford as a Republican candidate for Sheriff. There was no other person on the ballot running against Liford on the Republican primary ballot.

Teton County began early voting on April 4, 2016. On April 11, 2016, Hansen consulted with the Idaho Secretary of State regarding Liford's candidacy.  On April 12, 2016, Hansen declared Liford's candidacy as a Republican incumbent for Sheriff invalid, and began removing Liford's name from the Republican party primary election ballots. She notified Liford of her actions by letter. Hansen acted under Idaho Code § 34-627, which she has referred to as an "obscure election law." The statute indicates the holder of a partisan elective office may change his or her political party affiliation, but the change is not "official" until five calendar days after receipt of the declaration of intent. The same statute indicates also that the holder of a partisan elective office cannot change political parties between the date the holder files for the primary election through three months after the general election in which the partisan elective office was on the ballot.

**MEMORANDUM DECISION AND ORDER - 3**

Idaho Code § 34-627. According to Hansen, this statute operated to prevent Liford's change in party affiliation.

It is Hansen's position that Liford is eligible to run only as a write-in candidate on the Democratic primary ballot, and she will not accept Liford's declaration of candidacy as a write-in candidate on the Republican primary ballot. Hansen determined Liford's party affiliation change on March 10, 2016, was not effective, and therefore his otherwise timely declaration of candidacy as a Republican Party candidate that same day was invalid, because he was not affiliated with the Republican Party on March 10, 2016.

Plaintiff supports Liford's candidacy as a Republican candidate for Sheriff, and has indicated it will support Liford as a write-in candidate or, alternatively, will select him to fill a vacancy to be on the primary ballot. April 19, 2016, is the last day for Liford to file his declaration of intent to run as a write-in candidate for the May 17 primary election. However, Hansen has indicated she will not accept Liford's write-in declaration if he intends to affiliate with the Republican Party, as she maintains Liford's change in party affiliation was not effective.

Lindsay Moss, who at the time of the November 6, 2012 general election was registered as a Republican, lost the general election to Liford by 34 votes. (Dkt. 1-6 at 4.) Moss is again running for the office of County Sheriff, but as a registered Democrat in the Democratic Party primary election.

**MEMORANDUM DECISION AND ORDER - 4**

# ANALYSIS

**1.    Standing**

Plaintiff must have standing to sue Defendant for abridgement of its First

Amendment right to free association and its Due Process rights under the Fourteenth

Amendment. The party invoking federal jurisdiction bears the burden of proving the three

elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Those

three elements are: (1) proof of an injury in fact that is concrete and particularized, as

well as actual or imminent; (2) a causal connection between the injury and the conduct

complained of, which injury must be traceable to the defendant's action and not the

independent action of a third party not before the court; and (3) it must be likely, as

opposed to speculative, that the injury will be addressed by a favorable decision. *Lujan*,

504 U.S. at 560–61. *See also Beck v. Ysursa*, No. CV-07-299-MHW, 2007 WL 4224051

(D. Idaho Nov. 27, 2007) (determining individual members of the Republican Party did

not have standing as individuals to sue the Idaho Secretary of State for abridgement of

their First Amendment Right to free association).

Closely related to the case or controversy requirement are other limitations on the

concept of standing. Even if the plaintiff has alleged an injury sufficient to meet the

standards of constitutional standing under *Lujan*, the plaintiff must generally "assert his

own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). *See also Dunmore

v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (dismissing a party's case when

another party was the real party in interest); Fed. R. Civ. P. 17(a) ("[e]very action shall be prosecuted in the name of the real party in interest.").

The Teton County Republican Central Committee ("TCRCC") is an Idaho Association formed in accordance with Idaho Code § 34-502, which expressly allows the formation of a county central committee of each political party in each county within the state of Idaho. According to Idaho Code § 34-714, the county central committee is permitted to fill a vacancy that occurs prior to the primary election in the slate of candidates of any political party because of the disqualification of a candidate, if only one candidate declared for that particular office. The county central committee is required to fill the vacancy within fifteen days from the date the vacancy occurred. Idaho Code § 34-714.

Defendant argues TCRCC does not have standing, and the real party in interest here is Liford, who is not named as a Plaintiff. Defendant argues Plaintiff has no due process or other right to place a candidate who is not affiliated with the Plaintiff's party on the partisan ballot. Defendant contends Liford's request to affiliate with the Republican Party was never effectuated, he is still a Democrat, and he cannot be placed on the ballot by TCRCC. Defendant further claims Liford was not "disqualified" so TCRCC has no vacancy to fill. Nonetheless, Defendant conceded at the hearing Liford may vote in the Republican primary election as a Republican, because as an elector, his March 10, 2016 party affiliation change is valid under Idaho Code § 34-411A.

Here, Defendant's position that Liford's declaration of intent to change his political party affiliation from Democrat to Republican directly affects TCRCC's election

**MEMORANDUM DECISION AND ORDER - 6**

prospects. TCRCC endorses Liford as its candidate of choice. Defendant's actions harm TCRCC's election prospects. *See Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (explaining the party would suffer financial injury and harm to its election prospects if forced to replace its candidate); *Hollander v. McCain*, 566 F.Supp.2d 63, 68 (D. N.H. 2008) ("courts have held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election.").

Turning to causation and redressability, Defendant's declaration of Liford's ineligibility to run as a Republican candidate, and her directive that TCRCC choose a different candidate, damages TCRCC's political prospects, and would require it to expend additional resources to endorse another candidate. The Court's injunction would directly redress TCRCC's injury in that regard.

Additionally problematic is the party's right to retain electors who want to affiliate with the party. Here, apart from Liford's status as an incumbent, he is also an elector eligible to vote in the primary election. He chose to affiliate with the Republican Party. Defendant's position that Liford's affiliation with the Republican Party is void directly harms the Republican Party itself, by diluting its membership and disenfranchising an individual who desires to vote in the Republican primary election.

Although at the hearing Defendant expressed that, for voting purposes, Liford may vote in the upcoming closed Republican primary, the Court cannot fathom how an individual can be recognized by the Clerk or Secretary of State as a Democrat for one purposes, and a Republican for another, at the same time. The Republican Party has an

interest in protecting the rights of its members, including those who would be members but for Defendant's invalidation of Liford's election to do so.

The parties did not address associational standing. However, in *Benkiser,* the court held the Texas Democratic Party had associational standing on behalf of its candidate. 459 F.3d at 587. Associational standing requires application of a three part test: 1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). In *Benkiser*, the court found the party had standing because the Democratic candidate would independently have standing; the party sought to protect its organizational interests by having its candidate elected; and that the candidate himself did not need to participate, because the party fully represented his interests. *Id.* The Court finds *Benkiser* persuasive here.

Accordingly, the Court determines at this time that TCRCC has standing to pursue its federal claims under Section 1938.

## 2.      Standard for Preliminary Injunction

The Plaintiff seeks both a temporary restraining order and a preliminary injunction. Both are at issue before this Court at this time, and are fully briefed and supported by affidavits. The Court views the matter as one of statutory interpretation, as Defendant does not dispute the facts before the Court. Therefore, no further submissions would aid the Court, and the Court finds it unnecessary to bifurcate the request for a

**MEMORANDUM DECISION AND ORDER - 8**

temporary restraining order and decide the preliminary injunction motion at a later time. Moreover, the standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D.Cal.1995).

Preliminary injunction motions are governed by Federal Rule of Civil Procedure 65(a).[1] "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'" *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (citation omitted). The Ninth Circuit considers all of the elements, except for irreparable injury, using a sliding scale approach where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Irreparable injury is not, however, subject to such balancing. To satisfy the irreparable injury element, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22-23 (emphasis in original).

A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment. *Textile Unlimited, Inc. v. A.BMH Co., Inc.*, 240 F.3d 781 (9th Cir. 2001)

---

[1] Both parties cited the state law standard applicable to preliminary injunctions. Because this matter was removed to this Court, federal procedural law applies.

(citing *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422 (9th Cir. 1984). While courts are given considerable discretion in deciding whether a preliminary injunction should enter, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Sampson v. Murray*, 415 U.S. 61 (1974); *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co*., 363 U.S. 528 (1960); and *Stanley v. Univ. of Southern California*, 13 F.3d 1313 (9th Cir. 1994).

## A.   *Likelihood of Prevailing on the Merits*

Idaho's election laws provide the framework for determining Plaintiff's success on the merits. The state plays a major role in structuring the primary election process. *Idaho Republican Party v. Ysursa*, 765 F.Supp.2d 1266, 1269 (D. Idaho 2011). But the process by which a political party selects its nominees for general elections is not a wholly public affair which a state may freely regulate. *Id.* (citing *California Democratic Party v. Jones*, 530 U.S. 567, 573–74 (2000)). A state must act within constitutional limits when it regulates a political party's internal processes. *Id*. Among those constitutional limits is the First Amendment right to freedom of association, which protects the freedom to join together in furtherance of common political beliefs. *Jones*, 530 U.S. at 575 (Internal quotations and citations omitted). This right "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Id*. An important corollary of the right to freely associate is a right not to associate. *Id*.

**MEMORANDUM DECISION AND ORDER - 10**

This political freedom of association (and right to exclude) is most critically manifested in the political party's process of selecting its nominees. *Idaho Republican Party*, 765 F.Supp.2d at 1269. This process "often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Jones*, 530 U.S. at 575. (Internal citations omitted). For this reason, the Supreme Court consistently "affirm[s] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party select[s] a standard bearer who best represents the party's ideologies and preferences." *Id*. (Internal citation and quotations omitted).

Consequently, when a court considers a challenge to state election law, the court must "weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (Internal citations and quotations omitted). Under this standard, the rigorousness with which a court inquires into the propriety of a state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights. *Id*. On the one hand, a state regulation must be narrowly drawn to advance a compelling state interest when First and Fourteenth Amendment rights are subjected to severe restrictions. *Id*.; *see also Washington State Grange v. Washington State Republican*, 552 U.S. 442, (2008). On

**MEMORANDUM DECISION AND ORDER - 11**

the other hand, a state's regulatory interests generally justify the restrictions when the provision of a state election law imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of the voters. *Id*.; *see also Washington State Grange*, 128 S.Ct. at 1192.

Here, there are two competing considerations regarding changing one's party affiliation.  First, there are the statutes regarding an elector's ability to change his or her party affiliation in advance of the primary election. Second, the legislature saw fit to proscribe a procedure for a holder of a partisan elective office to change his or her political party affiliation. Both parties seek to reconcile the two. But, Defendant's interpretation would effectively disenfranchise Liford for purposes of voting in the Republican primary election, and prevent Plaintiff from associating with him, despite Liford's expressed intention to do so. As the Court will further explain, Plaintiff has therefore shown a strong likelihood of prevailing on the merits.

Idaho Code § 34-411A applies to all voters in Idaho, and indicates that, for a primary election, "an elector may change such elector's political party affiliation by filing a signed form with the county clerk no later than the last day a candidate may file for partisan political office prior to such primary election." Party affiliation in Idaho is important, because if an elector desires to vote in the Republican Primary, the 2007 Closed Republican Party Primary Rule permits only persons timely registered as a Republican prior to the primary election to vote on an Idaho Republican Party ballot in that primary election. *See Idaho Republican Party v. Ysursa*, 765 F.Supp.2d 1266 (D. Idaho 2011) (declaring Idaho's mandate of the open party primary system set forth in

Idaho Code § 34-904 unconstitutional as applied to the Idaho Republican Party). In this case, the last day to change one's party affiliation to empower the individual to vote in the upcoming Republican Primary election was March 11, 2016.

There are specific statutes regarding change in party affiliation for holders of political office. Political office holders, who are also electors, are subject to Idaho Code § 34-627. The statute states:

> Whenever any *holder of a partisan elective office* desires to change political parties, the *change shall only be effective if the holder files a declaration of intent to change political parties with the election official* with whom the holder of the partisan elective office has filed his declaration of candidacy for the office that the holder of the partisan elective office currently holds. The party change *shall be official five (5) calendar days after receipt of the declaration* of intent provided in this section by the election official. After receiving the declaration of intent, the election official *shall send a copy of the declaration* to the affected political party central committees of both the political party, if any, that the holder of the partisan elective office desires to leave and the political party, if any, that the holder of the partisan elective office desires to join. A holder of a partisan elective office *cannot change political parties between the date the holder of partisan elective office files for the primary election through three (3) months after the general election in which the partisan elective office was on the ballot.* A holder of a partisan elective office only may change political parties pursuant to this section once per term.

Idaho Code § 34-627 (emphasis added)

If an individual desires to declare his or her candidacy for public office, provided he or she is legally qualified to do so, the individual must file the declaration of candidacy in the proper office:

> between 8 a.m., on the twelfth Monday preceding the primary election and 5 p.m., on the tenth Friday preceding the primary election. All political party candidates shall *declare their party affiliation in their declaration of candidacy and shall be affiliated with a party at the time of filing.* A candidate *shall be deemed affiliated with the political party if the candidate*

**MEMORANDUM DECISION AND ORDER - 13**

> *submits a party affiliation form along with the declaration of candidacy* to
> the filing official. The filing official shall reject any declaration of
> candidacy for partisan office in a primary election from candidates who are
> not affiliated with a political party. Candidates for nonpartisan office shall
> file during the period provided for in this section.

Idaho Code § 34-704

According to the election calendar, the deadline here to declare candidacy was also March 11, 2016. Between March 11, 2016, and May 18, 2016, no elector in the state of Idaho may change their political party affiliation. Idaho Code § 34-411A; 34-704.

Defendant argues the language in Idaho Code § 34-627 indicating a change in party affiliation does not become "official" for five calendar days after receipt by the county clerk nullified Liford's declaration of affiliation as a Republican, and allowed Hansen to reject Liford's declaration of candidacy because Liford was not affiliated with the Republican Party at the time he submitted his declaration of candidacy on March 10, 2016. Defendants interpret the five day time period within which the party change becomes "official" in Idaho Code § 34-627 as rendering Liford's declaration of intent to change political parties not "effective" until March 15, 2016, and therefore argue Liford was still a Democrat on March 11, 2016, and not affiliated with the Republican Party at the time he filed his declaration of candidacy for Sheriff.

Defendant takes her interpretation one step further, arguing Idaho Code § 34-627 prohibits a holder of a partisan elective office from changing his or her party affiliation after filing a declaration of candidacy until three months after the general election. By applying this interpretation to Liford, Defendant contends Liford, having filed his declaration of candidacy as a Democrat on February 29, 2016, was precluded from

changing his political party affiliation until after the general election in November of

2016, and he is still a Democrat. However, at the hearing, Defendant conceded that, as an

elector, Liford could be considered a Republican and vote in the Republican Primary

election.

Defendants cannot have their cake and eat it too. Liford is either a Republican or a

Democrat for all purposes, but he cannot be both a Republican and a Democrat, as

Defendant's argue. To hold otherwise would disenfranchise Liford, and prevent him, as

an elector, from exercising his freedom to associate with the political party of his

choosing. By extension, Defendant's interpretation places a severe burden upon

TCRCC's right to freely associate with Liford and both increase its party base and

promote Liford as its candidate for Sheriff. *See, e.g.*, *Idaho Republican Party*, 765

F.Supp.2d at 1270.

There is no support in the legislative history for Defendant's substantive and

strained interpretation of Idaho Code § 34-627. According to the enabling legislation,

Idaho Code § 34-627, enacted in 1997, was added "to provide the procedure when the

holder of a partisan elective office desires to change political parties." S.B. No. 1112,

54th Leg., 1st Sess., (Idaho 1997).  The statement of purpose indicates the statute was to

"clarify in code when and how holders of partisan elected office in Idaho can change

party affiliation." News articles published at the time indicate the statute was intended to

remedy the lack of any party registration system in the state of Idaho, because it was not

until an individual became a candidate that his or her party affiliation was known. Betsy

Z. Russell, *House Oks Switching of Parties Measure Allows Elected Officials to Change*

**MEMORANDUM DECISION AND ORDER - 15**

*Allegiance*, THE SPOKESMAN-REVIEW, Mar. 15, 1997.[2] There is no indication the legislation was intended to operate in the manner Defendant suggests, which as applied in this case, would severely impair an elected official's right to associate with the political party of his or her choosing and run for political office, and thereby impact the right of TCRCC to affiliate with electors and endorse individuals running for political office under the Republican Party ticket during the primary election.

The plain meaning of the statute similarly suggests Defendant's interpretation is nonsensical. Defendant's interpretation of Idaho Code § 34-627 merges the meaning of "effective" with "official," because Defendant would have the Court accept that Liford's declaration of intent to change political parties was actually not effective until five days after its receipt by Hansen on March 10, 2016. Defendant's interpretation is contrary to the accepted dictionary meanings of the terms, which are distinct.

The accepted definition of "effective" means "producing a decided, decisive, or desired effect;" or "being in effect." *Effective Definition*, MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/effective (last visited Apr. 19, 2016). The definition of "official" means, "of or relating to an office, position, or trust;" "holding an office;" or "prescribed or recognized as authorized." *Official Definition*, MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/official (last visited Apr. 19, 2016). It also has an accepted meaning as "appointed, authorized, or

---

[2] An earlier news article indicates the statute was enacted for partisan reasons relating to the right to name successors to replace county commissioners. Craig Welch, *Kootenai Told to Name Democratic Assessor Supreme Court Ends Battle Over Political Appointment*, THE SPOKESMAN-REVIEW, Feb. 27, 1997.
    .

**MEMORANDUM DECISION AND ORDER - 16**

approved by a government or organization; formal and public, as a ceremony." THE
RANDOM HOUSE DICTIONARY 612 (Jess Stein ed., Ballantine Books 1980).

The Court accepts the common dictionary meanings for the words "effective" and
"official" contained in Idaho Code § 34-627, and interprets them harmoniously with
Idaho Code §§ 34-411A and 34-704. Effective means in effect right now, or some later
specified date, such as when a law becomes effective on the first day of July. Official, in
the context of Idaho Code § 34-627, means the pronouncement is formally or publicly
recognized by the Party so chosen.[3] To interpret otherwise would mean a public office
holder, who is also an elector, would be precluded from filing his or her party affiliation
change pursuant to Idaho Code § 34-411A, which permits electors to do so on the last
day a candidate may file for partisan political office prior to the primary election. Liford
would have had to file his party affiliation change five days prior to March 11, 2016, and
there is no indication of a corresponding requirement to do so in Idaho Code § 34-704.[4]

Section 704 indicates that a candidate "shall be deemed affiliated with the political
party if the candidate submits a party affiliation form along with the declaration of
candidacy to the filing official." There is nothing in section 704 indicating, in the case of
an already affiliated candidate who desires to change party affiliation, that he or she must
file the party affiliation form five days prior to filing the declaration of candidacy.

---

[3] As an example, all lawyers know that changes to the Idaho Code become effective July 1st of
every year, but the code is not officially published and available until some date thereafter.

[4] Nor is there any indication on the official Secretary of State election calendar that incumbents
changing party affiliation for the upcoming primary election must do so five days prior to the filing
deadline.

Section 704 indicates the party affiliation form is all that is necessary for the Clerk to deem a person affiliated with the political party designated on the party affiliation form.

Next, Hansen indicates the authority to reject Liford's declaration of candidacy derives from the clause in Idaho Code § 34-704, which states she "shall reject any declaration of candidacy for partisan office in a primary election from candidates who are not affiliated with a political party." In essence, Hansen's incorporation of a five day waiting period before Liford's party affiliation became "effectively official" placed Liford in some sort of party purgatory, where he was suddenly unaffiliated with any political party between March 10, 2016, and March 15, 2016. Yet, Defendants at the hearing suggested Liford remained a Democrat by virtue of his earlier declaration of candidacy. Defendant's argument cannot be reconciled with Hansen's interpretation of Idaho Code § 34-704, which would require her to simultaneously conclude Liford's change in party affiliation from Democrat to Republican was not effective, the withdrawal of candidacy as a Democrat was not effective, and therefore Liford is a Democrat and can still run as such (yet still vote in the Republican Primary).

And finally, the Court cannot reconcile Defendant's argument that Liford is now prevented from changing his party affiliation until three months after the November 2016 general election, which would essentially deny TCRCC its right to freely associate with Liford and promote him as the Republican candidate for Sheriff. Idaho Code § 34-527 indicates that a holder of a partisan elective office "cannot change political parties between the date the holder of partisan elective office files for the primary election through three (3) months after the general election in which the partisan elective office

**MEMORANDUM DECISION AND ORDER - 18**

was on the ballot." Liford filed for the primary election as a Democrat. Therefore, Defendant argues, Liford cannot change political parties until three months after the general election. For one to accept Defendant's argument, the first premise, that Liford's change in party affiliation and therefore the withdrawal of his candidacy as a Democrat was not effective, must also be accepted. The interpretation is nonsensical.

The Court therefore finds, based upon the plain, logical, and common sense meaning of the statutes at issue, as well as Liford's actions, there can be no five day waiting period before an incumbent's declaration of change in party affiliation becomes effective. Liford, like any other elector, is entitled to associate with the political party of his choosing, and TCRCC cannot be deprived of its right to associate with those desiring to join its ranks. The Court finds Plaintiff has established a strong likelihood of success on the merits.

### B.    *Irreparable Injury*

Irreparable injury is likely here. If Defendant's interpretation is accepted, and Liford declared to be a Democrat for purposes of his candidacy as Sheriff, TCRCC will be effectively prevented from promoting the individual of its choosing from running in the primary election, and ultimately the general election. That TCRCC may promote someone else is not a remedy. Additionally, Defendant's interpretation would leave Liford unable to change his party affiliation until after the November 2016 general election, preventing him from affiliating with TCRCC for purposes of the general election. And finally, Defendant's interpretation would prevent Liford from voting as he

chooses in the Republican Primary and result in the loss by the Republican Party of one of its electors.

###### C.   *Balance of Equities and Public Interest*

The balance of equities favors an award of injunctive relief in favor of Plaintiff. Recognizing the public interest in protecting against future harm to the political process, the Court finds the balance tips sharply in favor of the free exercise of political association.

Here, the harm that would likely occur without an injunction would leave the voters of Teton County without the individual of the Republican Party's choosing on the Republican Party primary ballot, and consequently, the general election ballot. TCRCC's interest in the sanctity of the political process for its party members far outweighs Defendant's interest here. In fact, other than interpreting the law correctly, Defendant has not identified an overriding state interest supporting its interpretation, which would leave incumbents who wished to change party affiliation unable, except through a special process applicable only to them, to change party affiliation like all other electors within the state of Idaho. Although Defendant's desire to interpret the election law correctly is commendable, the self-interested manner in which the law is interpreted and applied to Liford will prevent TCRCC from promoting the candidate of its choosing due to a manufactured technicality. Defendant's interpretation must yield in favor of the Constitutional rights at issue.

3.     **Bond**

Fed. R. Civ. P. 65(c) provides for the imposition of a bond upon the applicant for preliminary injunction "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Further, the Court is vested with discretion to determine the amount of security required, if any. *Barahona-Gomez v. Reno*, 167 F.3d 11228, 1237 (9th Cir. 1999) (explaining appellate review of the district court's determination of bond amount was not subject to reversal unless there was a clear abuse of discretion). The Court may dispense with the requirement of a bond "where requiring a security would effectively deny access to judicial review." *California v. Tahoe Regional Planning Agency*, 766 F.2d 1316, 1325 (1985).

Plaintiff requests the Court not impose a bond pursuant to Fed. R. Civ. P. 65(c), because Plaintiff is a political party affiliate and the costs to Defendant are negligible. Defendant contends a minimum bond of $100,000.00 is necessary to cover unspecified harms and unidentified costs, and Fed. R. Civ. P. 65(c) requires Plaintiff to post a bond to cover costs and damages incurred to the Defendant if the injunction is wrongfully issued.

Here, Defendant has not identified any cost to it. Hansen is an officer of Teton County, serving as the County Clerk. As such, she is required to administer elections within the county. The Court can determine the issues well in advance of the general election, at which time ballots will be printed and the party designees for the office of Sheriff identified on the general election ballot. The general election ballot must be printed and distributed regardless of the outcome here. The Court therefore cannot

identify any costs (nor has Defendant tendered any evidence on this issue) other than the attorney fees that will be incurred to continue contesting this issue in advance of the general election.

This matter presents an issue of public interest involving the Republican primary election for Sheriff of Teton County. The public interest is extremely high in seeing the electoral process carried out correctly.

Absent any showing by Defendant of cost, and considering the strong public interest in this matter, the Court determines a nominal bond of $5,000 is appropriate.

## CONCLUSION

The Court finds Defendant's interpretation of Idaho Code § 34-627, as applied to the undisputed facts presented here, would result in a five day waiting period before the holder of a partisan elective office may effect a change in party affiliation. This interpretation strains sound logic. Accordingly, Plaintiff is likely to succeed on the merits of its claim that Defendant unlawfully invalidated Tony Liford's change of party affiliation and declaration of candidacy for Sheriff filed on March 10, 2016. The Court finds irreparable harm will result to Plaintiff without an injunction. The Court does not reach Plaintiff's additional equitable arguments, finding its Constitutional arguments sufficient to determine the issues presented.

## PRELIMINARY INJUNCTION

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for

Preliminary Injunction (Dkt. 4) be, and the same is hereby, **GRANTED.**

**IT IS FURTHER ORDERED THAT:**

a.      Defendant and her agents, servants, employees and attorneys will

not, either directly or indirectly, remove Tony Liford's name from the 2016

Republican Party Primary Election Ballot.

b.      Defendant will make ballots available to voters in the 2016

Republican Party Primary Election that identify Tony Liford as a Republican

candidate for Sheriff.

c.      This injunction will remain in full force and effect through May 18,

2016, or until earlier modified by the Court.

**IT IS FURTHER ORDERED THAT** Plaintiff will be required to post a bond in

the amount of $5,000.00 in support of the preliminary injunction.

DATED: April 19, 2016

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**